NORTH AMERICA. The (COVERDALE v.). See Case No. 3,289.

NORTH AMERICA, The (HERSEY v.). See Case No. 6,429.

NORTH AMERICA, The (PERU v.). See Case No. 11,017a.

NORTH AMERICA, The (THAIN v.). See Case No. 13,853.

## Case No. 10,315.

### NORTH AMERICAN INS. CO. v. WHIPPLE.

[2 Biss. 418;[1] 3 Chi. Leg. News, 141.]

Circuit Court, N. D. Illinois. Jan., 1871.

EQUITY—REFORMATION OF INSURANCE POLICY.

1. A court of equity has power to reform and cancel an insurance policy issued by mistake for a greater length of time than was intended by the parties.

2. Circumstances stated under which a policy will be cancelled even after a loss has occurred.

This was a bill to amend and reform an insurance policy issued to the defendant on the 22d of October, 1864, and to enjoin the prosecution of a suit at law upon it. The defendant on that day called at the office of B. W. Phillips & Co., agents for this and several other insurance companies, asking for insurance on his stock of goods in Chicago, for two months, which insurance was apportioned among the different companies represented by Phillips & Co., of which the complainant took $15,000. The application was filled out in due form, for the period of two months, in the presence of Whipple, and was the memorandum used by the policy clerk in making out the policies; the total premium paid by the defendant was $60, which was proved to be the regular rates for two months' insurance in the respective companies for the amounts insured by them; wherever any record of the policy appears on the books of the insurance agents, it appears as a two-months policy. The policy clerk who filled out the policy testified that he made a

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

mistake in making it out, by filling out the policy to run until the 22d of December, 1865, instead of two months, according to the memorandum of application handed to him. The stock of goods was totally destroyed by fire on the 16th of December, 1865, and the defendant claimed that the insurance company was liable to him, and had commenced suit to recover the amount of his policy. The defendant's answer, the oath having been waived, insisted upon the validity of the policy, and that it was meant to be issued for fourteen months.

Goodwin, Larned & Towle, for complainant.

E. A. Storrs, for defendant.

BLODGETT, District Judge.[2] It is alleged, in substance, that the firm of B. W. Phillips & Co. was, at the time of the issue of said policy, and had been for some time previous thereto, agents in the city of Chicago for the complainant and several other insurance companies. On the said 22d day of October, 1864, said defendant applied to said firm for sixty days' insurance, to the amount of $40,000 on their said stock in trade, which amount was distributed by said firm among the various companies for which they were acting as agents, in doing which, $15,000 of said amount was allowed to complainant, and the policy in question issued therefor. But it is alleged that a mistake occurred in the making out of said policy, so that the same, instead of insuring the defendants for sixty days, as was the intention and meaning of the parties at the time, insured them for the term of fourteen months, or until the 22d day of December, 1865. The bill further alleges that a fire occurred in the store of defendant on the 16th day of December, 1865, totally destroying the stock of goods in said store, and that defendant now claims to hold complainant for said loss, to the extent of said $15,000 policy, and have commenced suit at law to recover the same. The bill prays that said contract of insurance may be so reformed and amended as to express the real intent of the parties, and that the further prosecution of said suit may be enjoined. The defendant answers without oath (answer under oath being waived by the bill) and insists that the policy was, in fact, intended, as it reads, to be a fourteen month policy, and deny that there is any mistake in the policy, or that the same should be in any respect reformed or changed. The answer also admits that the said policy was a part of the $40,000 applied for on the 22d of October, 1864, but denies that all said policies were made or intended to expire at the same time, and insists that said policy was in full force at the time of said fire, and now constitutes a valid right of action against the complainant.

[An examination of the authorities leaves no room to doubt the power of a court of equity to correct mistakes of the character alleged in this case when the allegations of the bill are fully sustained by the proof. In [Bradford v. Union Bank of Tennessee] 13 How. [54 U. S.] 66, Judge Nelson, in delivering the opinion of the court, says: "One of the most common class of cases, says Judge Story, in his Equity Jurisprudence, in which relief is sought in equity on account of a mistake of facts, is that of written agreements, either executory or executed. Sometimes by mistake the written agreement contains less than the parties intended. Sometimes it contains more, and sometimes it merely varies from their intent by expressing something different in substance from the truth of that intent. In all such cases, if the mistake is clearly made out by proof entirely satisfactory, equity will reform the contract so as to make it conformable to the precise intent of the parties." See, also, Henkle v. Royal Exch. Assur. Co., 1 Ves. Sr. 317; Hunt v. Rosmanier, 1 Pet. [26 U. S.] 13; Worden v. Williams, 24 Ill. 75; Ballance v. Underhill, 3 Scam. 459; 23 N. Y. 359; 12 Eng. Law & Eq. 178; 10 Fost. (N. H.) 193; 10 N. Y. 486; 1 Paige, 279; 8 Wend. 166. The answer in this case, not being called for under oath, is a mere pleading, and has no effect as evidence.

[The proofs taken in the case show that on the 22d of October, 1864, R. M. Whipple, one of the defendants, called at the office of B. W. Phillips & Co., complainant's agents, and asked for $40,000 insurance on the stock of goods of said firm, in their store, at 226 and 228 Lake street, for two months; that said Phillips & Co., being agents for several other insurance companies besides complainant, apportioned said risk as follows: Continental Insurance Co., of New York, $10,000; Equitable Insurance Co., of Chicago, $5,000; Market Insurance Co., of New York, $15,000; North American Insurance Co., of New York, $15,000. Mr. Davis, a clerk, at that time, for Phillips & Co., filled up an application in due form for the $10,000 allotted to the Continental, for two months, and in the margin noted the amount allotted to each of the other companies, to make up the $40,000. This was done in the presence of Whipple, and was the memorandum used by the policy clerk to make out the policies from. The total amount paid by Whipple as premiums on all these policies was $60, distributed as follows: North American Insurance Company, $22.50; Continental, $15; Market, $15; Equitable, $7.50; which is proven to be the regular rates charged for two months' insurance in the respective companies for the amounts insured by them. It is also shown that all the books of said Phillips & Co., in which any record of said policy was kept, show it to be a two months' policy. H. A. Beach, who was the policy clerk who filled out the policy from the application made by Barrett, testifies that he

made a mistake in the policy, and, instead of making it out for two months. according to the memorandum application handed him by Barrett, made it to run until the 22d of December. 1865.] [2]

It is easy to see how, in the filling up of printed blanks, a mistake like that alleged by the complainant might happen; and the policy clerk says that it occurred from the fact that he was accustomed, in the majority of instances, to fill up yearly policies. All the other policies were made out for two months. that is they expired on the 22d of December, 1864, instead of the 22d of December, 1865.

This is not contradicted by the defendant. Defendant himself, who personally procured this insurance, has no recollection, or does not testify to any, in regard to what transpired at the time he applied for the insurance. He admits that he obtained the insurance at the time mentioned, but does not profess to remember the time the policies were to run, from anything he can now recall of the transaction. It is shown in the proofs, and I presume it would be taken notice of without proof, that fourteen months is an unusual time for the life of an insurance policy. The usual time is two, three, four, six, and twelve months, and if, for any reason, the defendant had had occasion to apply for a policy so much out of the usual course of business, it would have made some impression upon his memory and that of the clerks and agents of the insurance company who participated in the transaction. So, also, the fact that only so small an amount was paid for a policy having so long a time to run would seem to be a circumstance calculated to excite attention and impress itself upon the memory. It is true that the defendant testifies that he afterwards sent his policies to the insurance agents to have them looked over and mistakes corrected; but both the agents deny that they ever saw this policy, and assert positively that they supposed the same had expired on the 22d of December, 1864, and had so entered the same on their books, and so informed complainant, and had no knowledge that the policy in question was claimed to be in force, until after the fire.

Under the evidence in this case I can but conclude that the substantial allegations in the bill are made out by the proofs, and that the complainant is entitled to the relief prayed.

Decree accordingly.

NOTE. If by fraud or mistake the terms of the order for insurance have been departed from in the policy, the court will consider the order as containing the contract between the parties, and variance from the order, unless contradicted by the proof, would be evidence of mistake. But the order can only be resorted to, so far as it varies from the policy, and in all other respects the policy will govern. Delaware

Ins. Co. v. Hogan [Case No. 3,765]; Collett v. Morrison. 9 Hare. 162.

If from mistake. the policy has been so framed, as not to correspond with the previous agreement of the parties, the error may be corrected, and the policy reformed in a court of equity; but this equitable power of remodeling a written agreement, is wisely exercised with extreme caution, and only upon the clearest evidence. To justify the remedial action of the court, the existence of the mistake, if positively denied by the insurer, must be established by proof morally irresistible. 1 Duer. Ins. p. 71.

A court of equity is the proper tribunal to reform a policy, but the evidence for this purpose must be very clear. Henkle v. Royal Exch. Assur. Co., 1 Ves. Sr. 317.

If a policy, when drawn and received. does not correctly express a previously concluded agreement for insurance, which it was designed by both parties to execute, equity will reform it. Oliver v. Mutual, etc., Ins. Co. [Case No. 10,498].

There cannot be any doubt that a court of equity has authority to reform a contract, where there has been an omission of a material stipulation by mistake. A policy of insurance is within this principle. But a court ought to be extremely cautious in the exercise of such an authority. It ought to withhold its aid where the mistake is not made out by the clearest evidence. Andrews v. Essex, etc., Ins. Co. [Case No. 374]; Phoenix Fire Ins. Co. v. Gurnee, 1 Paige. 278.

In the above cases the loss had occurred before bill filed.